UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JESSICA L. MORRIS,

      Petitioner,            Case No. 23-cv-12299
                                       Honorable Linda. V. Parker

v.

JEREMY HOWARD,

      Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

Petitioner Jessica L. Morris, confined at the Huron Valley Women's Correctional Facility in Ypsilanti, Michigan, has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In her application, Morris challenges her convictions for first-degree murder (under alternative theories of felony and premeditated murder) in violation of Mich. Comp. Laws § 750.316;[1] armed robbery in violation of Mich. Comp. Laws § 750.529, and unlawful imprisonment

---

[1] Morris was convicted of one count of first-degree murder under alternative theories that the murder was premeditated and/or that it was committed during the commission of an enumerated felony. Convicting a defendant of first-degree murder under these alternative theories does not violate double jeopardy so long as there is only one conviction, as was the case here. *People v. Williams*, 692 N.W.2d 722, 724 (Mich. Ct. App. 2005), *aff'd*, 715 N.W.2d 24 (Mich. 2006).

in violation of Mich. Comp. Laws § 750.349.  For the reasons that follow, the
Court is denying with prejudice Morris' petition.

## I. Background

A jury convicted Morris of the above charges in the Circuit Court for
Monroe County, Michigan.  The relevant facts are set forth in the Michigan Court
of Appeals' decision affirming her conviction.  *People v. Morris,* No. 351875,
2021 WL 3575354, at * 1-5 (Mich. Ct. App. Aug. 12, 2021), *lv. den.* 978 N.W.2d
824 (Mich. 2022).  Those facts are presumed correct on habeas review pursuant to
28 U.S.C. § 2254(e)(1).  *See Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016).

Morris' convictions arise from the murder of James Wappner, whose body
was found just north of the Michigan-Ohio border on December 3, 2018.  The
prosecutor presented evidence that Wappner was killed on December 2, 2018,
while attempting to sell drugs to Morris and her boyfriend and co-defendant,
Raymond Blanchong, inside a vehicle in the parking lot of the Bedford Inn in
Monroe County, Michigan.  The person who discovered Wappner's body called
911.  He did not disturb the body and did not observe money or drugs in the
surrounding area.

A paramedic who responded to the scene also did not find any money or
drugs in the surrounding area.  Nor did several Michigan State Police officers who
responded to the scene.  One of the officers, Trooper Eric Pearson, testified that

2

Wappner's pant pockets had been turned inside out, but the officer did not draw any conclusions from that fact.

The medical examiner determined that Wappner received approximately 20 stab wounds, three of which were fatal. The victim also suffered "severe blunt force injuries" to the back of his head. Although the medical examiner was unable to determine whether more than one knife was used in the killing, he did not rule out that possibility. He also opined that it would not have taken a strong individual to inflict the injuries that caused Wappner's death.

Michigan State Police Detective Sergeant Michael Peterson spoke with Wappner's girlfriend, Shayla Wright. Wright told Sergeant Peterson that Wappner owned two cellphones, one which he used for the sale of illegal drugs. Sergeant Peterson obtained search warrants for the cellphone records and learned that Wappner received multiple telephone calls from a single phone number on the night of his death. Sergeant Peterson later determined from cellphone records that the calls were made from a phone number associated with Blanchong and Morris. Sergeant Peterson tracked the location of one of the cellphones to Brian Walker, who was in possession of the cellphone and Wappner's vehicle.

After speaking with Walker, Sergeant Peterson obtained surveillance video footage from the Bedford Inn, taken on December 2, 2018, the night of Wappner's death. The video was played for the jury. Sergeant Peterson narrated portions of the footage. According to Sergeant Peterson, the video showed Wappner checking

into a room at the hotel on the night in question. Approximately seven minutes later, two persons arrived in the parking lot in a Chevy Avalanche. The driver of the Chevy Avalanche was a white male with a beard. The video showed Wappner exit the Bedford Inn and enter the Chevy Avalanche two times. On the second occasion, the vehicle began to shake back and forth "as if there [was] a struggle going on inside the vehicle." Shortly after this occurred, the Chevy Avalanche left the parking lot.

Amber Klemper, a resident at the Bedford Inn, testified she was in the Bedford Inn parking lot at approximately 11:50 p.m. on the night in question. She witnessed an altercation taking place in a maroon SUV in the parking lot. It appeared to Klemper as if the person sitting in the passenger seat of the vehicle was hitting the individual sitting in the driver's seat. Klemper indicated that the individual in the driver's seat was male but she could not determine if the person in the passenger seat was male or female.

Shayla Wright testified that she dated Wappner prior to his death, and he was a drug dealer. Wright testified that when Wappner left home about one day before his death, he had between $500 and $600 in cash on his person, as well as "a lot of drugs," including crack cocaine, marijuana, and pills. Wright recognized Morris because Wright had seen Wappner sell drugs to her and Blanchong on three prior occasions. On two of those occasions, Morris and Blanchong did not have enough money to complete the purchases.

4

Walker testified that he arrived at the Bedford Inn with Wappner at about 10:00 p.m. on December 2.  On the way there, Walker testified that Wappner received about six telephone calls from a woman who wanted to buy cocaine.  Shortly after Walker and Wappner arrived at the Bedford Inn, Wappner went to the parking lot with a "pretty big bag" of cocaine, intending to sell drugs to the person who had been calling him.  Wappner returned to the room after about 15 minutes, indicating that the person needed to obtain money from a nearby ATM.  During this conversation, Walker noticed that Wappner had about $200 cash in his pocket.  Wappner left the room again but did not return.  Walker waited for Wappner until about 2:30 a.m., and then left the motel in Wappner's vehicle.

In late December 2018, Blanchong and Morris were arrested in Colorado, while driving a Chevy Avalanche.  Sergeant Peterson traveled to Colorado to interview them.  During the interview, Blanchong showed Sergeant Peterson bite marks on his arm.  Michigan State Police Detective Sergeant Larry Rothman assisted with the interview and testified that Blanchong showed him bite marks on both his arm and neck.  The troopers also interviewed Morris.  Sergeant Peterson testified that, unlike Blanchong, Morris did not have any visible injuries on her body.

Sergeant Peterson testified that he also obtained surveillance video from a Red Roof Inn in Toledo, Ohio, which showed Blanchong checking in at 1:24 a.m. on December 3, 2018.  Surveillance video from the Red Roof Inn was played for

the jury, and Sergeant Peterson stated that the video showed Morris leaving the motel at 11:10 a.m. on December 3, 2018.  Sergeant Peterson determined that Morris and Blanchong left the Red Roof Inn and went to a car wash in Toledo, Ohio.  Surveillance video from the car wash was played for the jury.  The video showed Blanchong spraying the inside of the Chevy Avalanche with a power washer and washing the vehicle with cleaning chemicals for approximately one hour.  Morris assisted in the cleaning by vacuuming the inside of the vehicle.

After leaving the car wash, Morris and Blanchong traveled to a Quality Inn in Findlay, Ohio.  Surveillance video from the Quality Inn was played for the jury. The video showed Morris and Blanchong arriving at the Quality Inn.  Sergeant Peterson also stated that the video showed that the rear passenger-side window of the Chevy Avalanche was broken.

After leaving the Quality Inn, Morris and Blanchong traveled to Topeka, Kansas.  While in Kansas, Morris and Blanchong pawned the cellphone that was used to call Wappner on the night of his death.  Sergeant Peterson recovered the cellphone and determined that, between December 2 and December 5, 2018, the person using the cellphone had searched the internet for "stabbing in Lenawee County area, homicide in Lenawee County, missing persons in Toledo," and court records for both Blanchong and Morris.

Joni Johnson, a forensic scientist at the Michigan State Police forensic laboratory, testified as an expert in crime-scene processing and DNA analysis.

Johnson searched Wappner's vehicle but did not find any drugs, money, weapons. Johnson also searched the Chevy Avalanche and noticed that the rear passenger-side window had been broken.  Johnson photographed what appeared to be bloodstains on the driver's seat, behind the driver's seat, behind the front passenger seat, on the back seat, and on the ceiling of the vehicle.  Johnson determined that the stains in the vehicle were likely caused by blood, and she sent the samples to the laboratory for DNA analysis.

Amber Smith, another forensic scientist for the Michigan State Police, testified as an expert in crime-scene processing and DNA analysis.  Smith collected and analyzed evidence found in the rooms at the Quality Inn and Red Roof Inn where Morris and Blanchong were believed to have stayed.  Smith collected samples of what appeared to be bloodstains found in those rooms.  She testified that she did not find DNA from either Morris or Blanchong in the samples taken from the Red Roof Inn, but that their DNA was present in the samples taken from the Quality Inn.  Smith also analyzed the blood samples that Johnson recovered from the Chevy Avalanche.  Smith concluded that Wappner's DNA was present in three locations throughout the vehicle.

Rachael Starr, an intelligence analyst at the Michigan Intelligence Operations Center, testified as an expert witness in the analysis and mapping of cellular records.  Starr testified that Morris' cellphone was located near the Bedford Inn on the night of Wappner's death.  Starr testified that Morris made

more than eight calls to Wappner's cell phone between 11:00 p.m. and 11:59 p.m. that night.  Morris' cellphone then moved north and connected to cellular towers near the location where Wappner's body was discovered.  The cellphone then connected to cellular towers near the Red Roof Inn in Toledo, Ohio, a car wash in Toledo, and a location near the Quality Inn in Findlay, Ohio.  Finally, the cellphone connected to cell towers across various states, showing Morris' movement to Topeka, Kansas.  Starr verified that, during this time, Morris' cellphone never made any calls to 911.

Morris testified on her own behalf.  She began dating Blanchong in September 2018.  She admitted that they both used cocaine and marijuana.  Morris further acknowledged that she and Blanchong had purchased drugs from Wappner "a handful of times."  Morris admitted that she and  Blanchong attempted to purchase drugs from Wappner the night of his death, and that when Wappner entered the back seat of the Chevy Avalanche the first time, Blanchong informed him that they needed to obtain more money to complete the purchase.

According to Morris, she and Blanchong then returned to the parking lot of the Bedford Inn and Wappner re-entered the back seat of the vehicle.  Morris indicated that a struggle broke out between Blanchong and Wappner inside the vehicle, and that Blanchong was covered in blood.  Morris stated that she climbed into the driver's seat while the two men were fighting and drove away from the scene with both of them in the vehicle.

8

In contrast to Sergeant Rothman, who testified that the Chevy Avalanche was equipped with child locks on the rear doors, Morris indicated that the vehicle was unlocked while the victim was inside it. Morris admitted that, once Wappner lost consciousness, they proceeded to a wooded area and dumped his body by the side of the road before leaving Michigan.

Although Morris admitted that she was present when Wappner was killed, she insisted that Blanchong was responsible and that she did not assist in the murder. Morris admitted fleeing Michigan with Blanchong after the murder, but claimed she did so because Blanchong threatened her and her children. Morris admitted helping Blanchong clean his vehicle at the car wash after the murder, but again claimed that she did so because Blanchong threatened her. Morris acknowledged that she wrote a letter expressing her love for Blanchong while incarcerated.

Morris now seeks a writ of habeas corpus on the following grounds: (1) she was denied the right to present a defense; (2) the testimony of several police officers invaded the province of the jury; (3) she was denied the effective assistance of trial counsel; and (4) the evidence was insufficient to convict.

## II.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be

9

granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.

AEDPA "imposes a highly deferential standard for evaluating state-court rulings," and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v.*

10

*Alvarado*, 541 U.S. 652, 664 (2004)).  A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law."  *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002).

A state court's factual determinations are presumed correct on federal habeas review.  *See* 28 U.S.C. § 2254(e)(1).  This presumption is rebutted only with clear and convincing evidence.  *Id.*  Moreover, for claims adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III.  Discussion[2]

### A.  Right to Present a Defense – Claim 1

### i.  Blanchong's Statement to Police

Morris first claims she was denied the right to present a defense when the trial court would not allow her attorney to elicit testimony concerning Blanchong's statement to the police after his arrest, which Morris argues could have supported a claim of self-defense or defense of others.  Morris argues that the following out-of-court statement by Blanchong was admissible under the penal interest exception to

---

[2] Respondent urges the Court to deny Morris' claims on the ground that they are procedurally defaulted.  Morris claims ineffective of assistance of counsel, however, which may establish cause for procedural default.  *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).  Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of Morris' defaulted claims, the Court concludes that it is easier to consider the merits of these claims. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

the hearsay rule found in Michigan Rule of Evidence 804(b)(3): "[Y]ou want to hear my side of the story . . . I was protecting her.  I was protecting myself."

The Michigan Court of Appeals concluded that the trial court did not err in refusing to admit Blanchong's hearsay statement for several reasons.  First, the appellate court concluded that Blanchong's statement did not satisfy the requirements for admissibility under Rule 804(b)(3): "that the declarant is unavailable to testify, that the statement was against the declarant's penal interest, and that corroborating circumstances support the trustworthiness of the statement." *Morris*, 2021 WL 3575354, at *6 (citing *People v. Barrera*, 547 N.W.2d 280, 286 (Mich. 1996)).  Specifically, the Michigan Court of Appeals concluded that the second and third requirements were not met because the statement indicated that Blanchong was acting in defense of himself and Morris and he and Morris were in a romantic relationship, and thus Blanchong an incentive to make exculpatory statements on her behalf.  *Id.* at *6-7.  This decision was neither contrary to nor unreasonable application of Supreme Court precedent.  Nor was it based on an unreasonable determination of the facts.

Just as an accused has the right to confront the prosecution's witnesses to challenge their testimony, the accused also has the right to present his or her own witnesses to establish a defense.  This right is a fundamental element of due process of law.  *Washington v. Texas*, 388 U.S. 14, 19 (1967); *see also Crane v.*

*Kentucky,* 476 U.S. 683, 690 (1986) ("whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'") (internal citations omitted).  However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence.  *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996).

In fact, the Supreme Court has expressed its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts."  *Crane,* 476 U.S. at 689.  The Supreme Court gives trial court judges "wide latitude" to exclude evidence that is repetitive, marginally relevant, or that poses a risk of harassment, prejudice, or confusion of the issues.  *Id.* (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).

Moreover, under the standard of review for habeas cases as enunciated in § 2254(d)(1), it is not enough for a habeas petitioner to show that the state trial court's decision to exclude potentially helpful evidence to the defense was erroneous or incorrect.  Instead, a habeas petitioner must show that the state trial court's decision to exclude the evidence was "an objectively unreasonable

application of clearly established Supreme Court precedent." *See Rockwell v. Yukins*, 341 F.3d 507, 511-12 (6th Cir. 2003).

Here, the state courts reasonably concluded that Blanchong's out-of-court statement was hearsay, and that it did not fall within an exception to the hearsay rule, specifically as a statement against the penal interest of an unavailable declarant. Several courts have held that a defendant's right to present a defense was not violated by the exclusion of a co-defendant's hearsay statement that the co-defendant acted in self-defense and the defense of the defendant, because such statements do not come within the penal interest exception to the hearsay rule contained in Federal Rule of Evidence 804(b)(3), the federal counterpart to Michigan Court Rule 804(b)(3). *See United States v. Slatten*, 865 F.3d 767, 805-06 (D.C. Cir. 2017); *see also United States v. Henley*, 766 F.3d 893, 915 (8th Cir. 2014) (affidavit of unavailable declarant "was not clearly against his own interest because in it he claims he shot [the victim] in self defense"); *United States v. Shryock*, 342 F.3d 948, 981 (9th Cir. 2003) ("The district court did not abuse its discretion by excluding [a declarant's] statement that he shot the victims in self-defense because the statement was exculpatory, and not against his penal interest"); *see also Pierson v. Berghuis*, No. 1:10cv455, 2013 WL 4067619, at *11 (W.D. Mich. Aug. 12, 2013) (denying habeas relief on ground that the trial court erred in not allowing into evidence a co-defendant's out-of-court statement that he

14

shot the victim in self-defense, explaining that the statement was not against the co-defendant's penal interest as self-defense is a complete defense); *People v. Pierson*, No. 279653, 2008 WL 5382651, at * (Mich. Ct. App. Dec. 23, 2008) (same).  In addition, it was reasonable to conclude that Blanchong's statement was not trustworthy because he and Morris were romantically involved, and he thus had a motive to make a false exculpatory statement.  *See, e.g., Bachynski v. Warren*, 96 F. Supp. 3d 680, 704 (E.D. Mich. 2015*), rev'd on other grounds sub nom. Bachynski v. Stewart,* 813 F.3d 241 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 2026 (2016).

As stated, the fundamental right to present a defense is not absolute. Evidence deemed insufficiently unreliable, such as hearsay evidence, is excludable even if it may be relevant to the defense.  *See McCullough v. Stegall,* 17 F. App'x 292, 295 (6th Cir. 2001); *see also Allen v. Hawley,* 74 F. App'x 457, 462-63 (6th Cir. 2003).

### ii.  Evidence Regarding Morris' Previous Possession of Money

Morris maintains that she was denied the right to present a defense when her attorney failed to introduce evidence that Morris was arrested previously with

15

$38,000.00 in her possession.[3]  Morris argues that this evidence would have shown

that she did not have a motive to rob or kill Wappner.

The trial court did not prevent Morris from presenting this evidence.

Instead, as discussed below with respect to Morris' ineffective assistance of

counsel claim, her attorney chose not to present it.  "Morris cannot convert a

tactical decision not to introduce evidence into a constitutional violation of the

right to present evidence generally."  *Hare v. Minard*, No. 21-10454, 2024 WL

1184692, at * 9 (E.D. Mich. Mar. 19, 2024) (quoting *Rodriguez v. Zavaras*, 42 F.

Supp. 2d 1059, 1150 (D. Colo. 1999)).

### iii.  Jury Instruction

Morris argues next that the trial court erred in failing to give the jurors

Michigan Criminal Jury Instruction 8.5, which instructs that a defendant's mere

presence when a crime is taking place is insufficient to establish the defendant's

criminal liability.

As the Michigan Court of Appeals indicated in rejecting Morris'

related claim that trial counsel was ineffective for failing to request this

instruction, the prosecution presented sufficient evidence that Morris was

not merely present but actively participated in the crime.  *People v. Morris*,

---

[3] Morris also claims that her trial counsel was ineffective for failing to present this evidence.

16

2021 WL 3575354, at * 9.  For example, there was testimony that Wappner

received several calls from Morris' cellphone before he was killed, and that

a woman could be heard speaking to Wappner over the phone.  Thus, it

appeared that Morris arranged the meeting with Wappner.  There was further

evidence that Morris and Blanchong did not have enough money to purchase

drugs from Wappner twice before, and thus perhaps planned to rob him.

There also was evidence of Morris' involvement in the attempt to conceal

Wappner's death.  *Id.*

In short, Morris is not entitled to habeas relief on this claim because the

evidence did not warrant a jury instruction on mere presence, where there was no

evidence that Morris was merely present while her co-defendant robbed and

murdered the victim.  *See, e.g., Cross v. Stovall*, 238 F. App'x 32, 39 (6th Cir.

2007).

## B.  Testimony Invading the Province of the Jury - Claim 2

Morris next contends that her due process rights were violated because the

testimony of two police officers called by the prosecutor invaded the province of

the jury and deprived her of a fair trial.  This claim relates to the officers' narration

of the video evidence.  Specifically, Morris points to Sergeant Peterson's

identification of Morris as one of the individuals in the video and general narration

of the events depicted in the video, and Trooper Pearson's purported testimony

regarding his conclusion that Wappner had been robbed because his pockets were found pulled out when his body was located.

The Michigan Court of Appeals held that Sergeant Peterson's identification testimony was not consistent with Michigan law and invaded the province of the jury, as Sergeant Peterson was in no better position than the jury to identify Morris in the video. *Morris*, 2021 WL 3575354, at *11. Nevertheless, the state court concluded that this testimony did not affect the outcome of the proceedings, as there was other evidence linking Morris to the crime. *Id*. The Michigan Court of Appeals found no error in Sergeant Peterson's narration of the video. *Id.* at *12. As Trooper Pearson testified that he did not draw any conclusions from the fact that Wappner's pockets were turned inside out, the state court concluded that his testimony did not invade the province of the jury. *Id*. The state court's finding is supported by the record. (*See* ECF No. 8-10 at PageID. 835.)

It is not the role of federal habeas courts "to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Federal habeas courts generally do not question errors in the application of state law, especially rulings regarding the admissibility of evidence. *Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000).

18

Morris is not entitled to habeas relief on her claim that Sergeant Peterson's testimony was impermissible lay opinion testimony, because this is essentially a state law claim. *See Charles v. Thaler*, 629 F.3d 494, 500 (5th Cir. 2011) ("Because the state determined that [the law-enforcement officer's] testimony was permissible lay opinion under state evidentiary law notwithstanding his comment on [the defendant's] attitude, a federal habeas court may not conclude otherwise."). Morris also is not entitled to relief on her claim that the sergeant's testimony was improper because it invaded the province of the jury to determine Morris' guilt.

In *Cooper v. Sowders*, 837 F.2d 284 (6th Cir. 1988), the Sixth Circuit held that it was fundamentally unfair and a violation of due process to permit a detective to testify as an expert witness that all the evidence linked the petitioner, and no one else, to the crime. The Sixth Circuit concluded that "[t]he opinion-testimony had a direct influence on the jury's consideration of petitioner's guilt or innocence." *Id.* at 287. This holding, however, does not entitle Morris to habeas relief for several reasons.

First, Sergeant Peterson did not testify as an expert witness at Morris' trial. Second, the jury was instructed to judge a police officer's testimony by the same standard as the testimony of any other witness. (*See* ECF 8-12 at PageID. 1280). These two facts alone distinguish Morris' case from *Cooper*. *See Carter v. Vashaw,* 627 F. Supp. 3d 853, 861 (E.D. Mich. Sept. 13, 2022) (citing *Norton v.*

19

*Boynton,* No. 08-13200, 2011 WL 282433, * 8 (E.D. Mich. Jan. 26, 2011))

(distinguishing *Cooper* on these grounds to reject the petitioner's claim that officer

offered lay opinion testimony when he identified the petitioner as the perpetrator

after viewing surveillance videotape of the crime).   Third, *Cooper* lacks persuasive

authority as it was decided before the adoption of AEDPA; therefore, "the *Cooper*

court owed no deference to the state court decision on these issues[.]"   *Id.* (quoting

*Dorsey v. Banks*, 749 F. Supp. 2d 715, 758 (S.D. Ohio 2010)).   Finally, the lack of

Supreme Court precedent holding that a police officer may not opine as a lay

expert on the defendant's guilt or innocence compels the conclusion that the

Michigan Court of Appeals' rejection of Morris' claim was not an unreasonable

application of clearly established federal law.   *Id.* at 861-62 (citing *Wright v. Van

Patten,* 552 U.S. 120, 126 (2008); *Carey v. Musladin,* 549 U.S. 70, 77 (2006)).

In any event, the Michigan Court of Appeals found that no plain error

occurred in the admission of Sergeant Peterson's identification testimony due to

the other evidence, including Morris' own testimony and Starr's testimony

concerning the locations of Morris' cellphone, tying Morris to the crime scene and

various other locations on the videotapes.   *Morris,* 2021 WL 3575354, at * 11.

The plain error standard is functionally equivalent to the harmless error standard

applied in federal habeas cases.   *See Brown v. Burton*, No. 18-2145, 2019 WL

4865392, at *2 (6th Cir. Apr. 9, 2019) (citing *Brecht v. Abrahamson*, 507 U.S. 619,

637 (1993)).  Pursuant to the harmless error standard, the question is whether the error had a substantial and injurious effect or influence in determining the jury's verdict.  *Brecht*, 507 U.S. at 637.

As the state court reasonably found, additional evidence other than Sergeant Peterson's testimony placed Morris at the crime scene and at other locations with Blanchong.  This evidence included Morris' own testimony and cell phone records.  Even if it was error to admit Sergeant Peterson's identification testimony, the error was harmless.  *See, e.g., United States v. Isaac*, 763 F. App'x 478, 482-83 (6th Cir. 2019) (finding harmless error in admitting nonexpert testimony of police officer narrating and interpreting video evidence where other evidence against the defendant was overwhelming).  This is particularly the case where Morris "does not point to a single statement made by [Sergeant Peterson] that either offered an erroneous interpretation of the video[s] or could have substantially swayed the jury."  *Id.* at 483.

It also was not unreasonable for the Michigan Court of Appeals to conclude that Sergeant Peterson's narration testimony did not invade the province of the jury.  *See United States v. Torralba-Mendia*, 784 F.3d 652, 659 (9th Cir. 2015) ("an officer who has extensively reviewed a video may offer a narration, pointing out particulars that a casual observer might not see"); *United States v. Brown*, 754 F. App'x 86, 89 (3d Cir. 2018) (at trial for knowing possession of firearm by felon,

court did not abuse its discretion in admitting detective's testimony narrating surveillance footage; detective's observations highlighted what jury could not clearly see viewing footage at full speed and were based on extensive review of footage).  Similarly, the state court did not unreasonably conclude that Trooper Pearson's testimony did not invade the province of the jury when he indicated, in response to the prosecutor's question, that he drew no conclusions from his observation that Wappner's pockets had been turned inside out.  The Michigan Court of Appeals rejected the claim because Trooper Pearson testified that he drew no conclusions from this condition.  *Morris*, 2021 WL 3575354, at * 12.  As indicated previously, the state court's factual finding is reasonable.  (*See* ECF No. 8-10 at PageID. 835.)

"Personal knowledge or perceptions based on experience is sufficient foundation for lay testimony."  *United States v. Williams*, 41 F.4th 979, 984 (8th Cir. 2022) (internal quotation omitted).  Even if Trooper Pearson had provided his opinion, this would not invade the province of the jury because his testimony was based on his personal perceptions from the crime scene.  *See, e.g., United States v. Dickens*, 748 F. App'x 31, 43-44 (6th Cir. 2018).

For the reasons discussed above, Morris is not entitled to relief on her second claim.

## C. Ineffective Assistance of Counsel – Claim 3

Morris argues that she was denied the effective assistance of trial counsel.

To establish entitlement to this claim, Morris must satisfy the familiar two-prong

test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984): (1) that her trial

"counsel's performance was deficient" and (2) "that the deficient performance

prejudiced [her] defense." *Id*. at 687.  To satisfy the first prong, Morris must

overcome "a strong presumption that counsel's conduct [fell] within the wide

range of reasonable professional assistance; that is, . . . that, under the

circumstances, the challenged action might be considered sound trial strategy." *Id*.

at 689 (internal quotation mark and citation omitted).  To satisfy the second prong,

Morris must show that "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." *Id*.

at 694.  It is Morris' burden to satisfy both prongs. *See Wong v. Belmontes*, 558

U.S. 15, 27 (2009).

### i.  Evidence Regarding Money Possessed During Previous Arrest

Morris first argues that her trial counsel was ineffective for failing to

introduce evidence that Morris possessed $38,000.00 when she was previously

arrested.  Morris claims this evidence would have negated any intent on her part to

rob or murder Wappner.

23

The state court rejected this claim, finding that it was reasonable for Morris'
trial counsel to not offer this evidence because it may have caused the jury to
conclude that Morris "had a propensity to commit crimes" and to speculate on the
source of the money. *Morris*, 2021 WL 3575354, at *8. The state court also found
it unlikely that the evidence would have aided Morris' defense as it did not
undermine Morris' motive to rob Wappner on the night in question. *Id*. The
Michigan Court of Appeals' decision was reasonable, precluding habeas relief.

The mere fact that Morris possessed a large sum of money on a prior
occasion did not mean she had sufficient money to purchase drugs from Wappner
on the night he was killed. Any value of the evidence also must be considered in
light of the overwhelming evidence of Morris' guilt. It also must be considered
against the potential prejudice to Morris of the jury learning of her prior arrest.

### ii.  Instruction on Mere Presence

Morris next contends that trial counsel was ineffective for failing to request
an instruction on mere presence. But as discussed earlier, the trial testimony was
"replete" with evidence of Morris' active involvement in Wappner's murder. *See
Harding v. Bock,* 107 F. App'x 471, 479 (6th Cir. 2004). Thus, even if counsel's
failure to request the mere presence instruction constituted a deficiency, there is
not a reasonable probability that the result of the proceedings would have been
different.

### iii. Failing to File Motion in Limine Regarding Blanchong's Out-of-Court Statement

Morris next argues that her trial counsel was ineffective for failing to bring a motion in limine seeking the admission of Blanchong's out-of-court statement prior to trial, instead of waiting until trial to request its admission. The Michigan Court of Appeals rejected this claim, finding that the trial court correctly determined that Blanchong's statement was not admissible under Michigan Rule of Evidence 804(b)(3). *Morris*, 2021 WL 3575354, at *10. Thus, the state court concluded, even if defense counsel had raised the issue in a pre-trial motion, Blanchong's statement still would not have been admitted. *Id.*

As discussed earlier, the trial court did not err in finding Blanchong's out-of-court statement to be inadmissible hearsay. Counsel cannot be deemed ineffective for failing to bring a motion in limine because there is no indication that the motion would have been successful. *See Dibble v. United States*, 103 F. App'x 593, 595 (6th Cir. 2004); *see also United States v. Heatwall*, No. 91-3164, 1991 WL 165589, at *2 (6th Cir. 1991) ("A rule of law, which would require counsel to file frivolous motions in order to insulate himself from a future claim of being ineffective, is one that has little to commend it.).

### iv. Failing to Object to Sergeant Peterson's Identification Testimony

Morris lastly argues that her trial counsel was ineffective for failing to object to Sergeant Peterson's testimony identifying Morris as one of the persons on the

25

surveillance videotapes.  This Court has already determined that the admission of

Sergeant Peterson's testimony was harmless error.  "The prejudice prong of the

ineffective assistance analysis subsumes the *Brecht* harmless-error review."  *Hall*

*v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009).  Because any error in the

admission of Sergeant Peterson's identification testimony was harmless, Morris

was not prejudiced by counsel's failure to object.

For the above reasons, Morris is not entitled to relief on her third claim.

### D.    Sufficiency of Evidence - Claim 4

In her last claim in support of her habeas petition, Morris argues that the

evidence was insufficient to convict her of the various charges.

"It is well established that the Due Process Clause of the Fourteenth

Amendment 'protects the accused against conviction except upon proof beyond a

reasonable doubt of every fact necessary to constitute the crime with which he [or

she] is charged.'"  *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting *In Re*

*Winship*, 397 U.S. 358, 364 (1970)) (alteration in *Smith*).  When a defendant

claims that he or she was convicted based on insufficient evidence, the court asks

"whether, after viewing the evidence in the light most favorable to the prosecution,

*any* rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt."  *Id*. (quoting *Jackson v. Virginia*, 443 U.S. 307, 318

(1979)).

When making this assessment, the court "do[es] not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Id*. (quoting *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009)). "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (quoting *Jackson*, 443 U.S. at 319). The court must give "circumstantial evidence . . . the same weight as direct evidence." *See Bechtol v. Prelesnik*, 568 F. App'x 441, 449-50 (6th Cir. 2014) (quoting *United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993)) (brackets removed). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006) (internal quotation omitted); *see also Saxton v. Sheets*, 547 F.3d 597, 606 (6th Cir. 2008) ("A conviction may be sustained based on nothing more than circumstantial evidence."). Moreover, "[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003) (quoting *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 508 n.17 (1957)); *see also Holland v. United States*, 348 U.S. 121, 140 (1954) (circumstantial evidence is "intrinsically

27

no different from testimonial evidence," and "[i]f the jury is convinced beyond a reasonable doubt, we can require no more").

Where the state court evaluated a petitioner's sufficiency of the evidence claim on the merits, "there is a second layer of deference mandated by AEDPA." *Smith*, 962 F.3d at 205. Under *Jackson*, a reviewing court must evaluate the evidence in the light most favorable to the prosecution and can grant relief only if the verdict was unsupported. *Supra*. AEDPA precludes a habeas court from granting relief unless the state court's sufficiency-of-the-evidence determination was unreasonable. *Brown*, 567 F.3d at 205; *see also Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (citing *Renico*, 559 U.S. at 773) (explaining that a federal court may overturn a state court decision rejecting a sufficiency of the evidence challenge "only if the state court decision was 'objectively unreasonable'"). Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman*, 566 U.S. at 656. A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under AEDPA." *Id.*

Morris first contends that there was insufficient evidence that an armed robbery or unlawful imprisonment took place. Thus, by extension, she maintains there was insufficient evidence to support her felony murder conviction which was

predicated on these charges.  The elements of first-degree felony murder under

Michigan law are:

> (1) the killing of a human being;
>
> (2) with an intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm is the probable result (i.e., malice);
>
> (3) while committing, attempting to commit, or assisting in the commission of one of the felonies enumerated in the felony murder statute.

*Matthews v. Abramajtys*, 319 F.3d 780, 789 (6th Cir. 2003) (citing to *People v.*

*Carines*, 597 N.W.2d 130, 136 (Mich. 1999)).

> Armed robbery requires proof that:
>
>> (1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon.

*People v. Gibbs*, 830 N.W.2d 821, 830 (Mich. Ct. App. 2013) (quoting *People v.*

*Chalmers*, 742 N.W.2d 610, 614 (Mich. Ct. App. 2007)).  Unlawful imprisonment

requires a knowing restraint of "another person under any of the following

circumstances: (a) The person is restrained by means of a weapon or dangerous

instrument[;] (b) The restrained person was secretly confined[;] (c) The person was

restrained to facilitate the commission of another felony or to facilitate flight after commission of another felony." *United States v. Anderson*, 608 F. App'x 369, 373 (6th Cir. 2015) (quoting Mich. Comp. Laws § 750.349b(1)).  The statute defines "restrain" as "to forcibly restrict a person's movements or to forcibly confine the person so as to interfere with that person's liberty without that person's consent or without lawful authority.  The restraint does not have to exist for any particular length of time and may be related or incidental to the commission of other criminal acts." *Id.* (quoting Mich. Comp. Laws § 750.349b(3)(a)).

Further, Morris was convicted of the charged offenses in part under an aider and abettor theory.  To support a finding under Michigan law that a defendant aided and abetted in the commission of a crime, the prosecution must establish that:

> (1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he [or she] gave aid and encouragement.

*Riley v. Berghuis,* 481 F.3d 315, 322 (6th Cir. 2007) (citing *Carines*, 597 N.W.2d at 135).  As to the second element, " '[a]iding and abetting' describes all forms of assistance rendered to the perpetrator of a crime and comprehends all words or deeds that might support, encourage, or incite the commission of a crime."

*Carines*, 597 N.W.2d at 135 (citation omitted).  As to the third element, "[t]he

aider and abettor's specific intent or his [or her] knowledge of the principal's

specific intent may be inferred from circumstantial evidence." *Thomas v.*

*Stephenson*, 898 F.3d 693, 699 (6th Cir. 2018) (quoting *People v. McRunels*, 603

N.W.2d 95, 102 (Mich. Ct. App. 1999)).  "Factors that may be considered include

a close association between the defendant and the principal, the defendant's

participation in the planning or execution of the crime, and evidence of flight after

the crime." *Id.* (quoting *Carines*, 597 N.W.2d at 135).

The Michigan Court of Appeals found sufficient evidence to convict Morris

of armed robbery or unlawful imprisonment and, thus, felony murder.  *Morris*,

2021 WL 3575354, at *12-13.  The state court's decision was neither contrary to

nor an unreasonable application of *Jackson*, and was not based on an unreasonable

determination of the facts.

There was testimony that Wappner possessed drugs and at least $200 in cash

when he went to the parking lot to meet Morris and Blanchong.  The evidence

showed that Wappner entered Blanchong's Chevy Avalanche to sell drugs to

Morris and Blanchong, and that after he entered the vehicle, there was a struggle.

Morris then drove the Avalanche away, with Wappner still inside.  When

Wappner's body was found the following day, with approximately 20 stab wounds,

his pockets were turned inside out, and he had no drugs or cash on his person.  No

drugs or cash were found near his body, either.  There also was evidence that Blanchong and Morris did not have enough money to buy drugs from Wappner on at least two prior occasions.

Morris next argues that there was insufficient evidence to convict her of first-degree murder under a theory of premeditation.  To convict a defendant of first-degree murder in Michigan, the prosecution must prove that a defendant's intentional killing of another was deliberated and premeditated.  *Cyars v. Hofbauer*, 383 F.3d 485, 591 (6th Cir. 2004) (citing *People v. Coddington*, 470 N.W.2d 478, 487 (Mich. Ct. App. 1991)); *Scott v. Elo*, 302 F.3d 598, 602 (6th Cir. 2002) (citing *People v. Schollaert*, 486 N.W.2d 312, 318 (Mich. Ct. 1992)). "Premeditation and deliberation may be inferred from the facts and circumstances established on the record."  *Cyars*, 383 F.3d at 491 (citing *Coddington*, 470 N.W.2d at 487).  "Circumstantial evidence demonstrating premeditation includes, but is not limited to (1) the prior relationship of the parties; (2) [the] defendant's actions before the killing; (3) the circumstances, including the wound's location, or the killing, and (4) [the] defendant's conduct after the killing."  *Id.* (citing *Coddington*, 470 N.W.2d at 487; *People v. Anderson*, 531 N.W.2d 780, 786 (Mich. Ct. App. 1995)).  "Premeditation and deliberation require sufficient time to allow the defendant to take a second look."  *Id.* (quoting *Coddington*, 470 N.W.2d at 487).  When the defendant is convicted of first-degree murder under an aiding and

32

abetting theory, premeditation may be shown based on the defendant's intent or that of his or her co-defendant. *See Puckett v. Costello*, 111 F. App'x 379, 382 (6th Cir. 2004) (quoting *People v. Youngblood*, 418 N.W.2d 472, 475 (Mich. Ct. App. 1988)).

The Michigan Court of Appeals found sufficient evidence to support Morris' first-degree murder conviction under a premeditation theory citing, in part, Morris' presence in the vehicle during the struggle and killing of Wappner and the number of stab wounds inflicted on Wappner. *Morris*, 2021 WL 3575354, at *15. The state court further pointed to Blanchong and Morris' prior drug purchases from Wappner, including instances where they lacked sufficient funds to complete the purchase, and their indication that they needed to go to an ATM to get money to pay Wappner on the night of his killing. *Id.* According to the state court, Blanchong and Morris' failure to retrieve any money before returning to the Bedford Inn suggested that they intended to steal from Wappner. *Id.*

This was neither an unreasonable application of *Jackson* nor an unreasonable determination of the facts. *See Drain v. Woods*, 902 F. Supp. 2d 1006, 1028 (E.D. Mich. 2012); *aff'd* 595 F. App'x 558 (6th Cir. 2014). The fact that Morris or Blanchong, or both, used a knife or knives to stab the victim multiple times is evidence of premeditation. *See People v. Oros*, 917 N.W.2d 559, 569 (Mich. 2018) (finding sufficient opportunity for deliberation where the

defendant obtained a knife—either from the victim's kitchen or from the victim after struggling her for it—and then stabbed the victim 29 times). Morris and her co-defendant fled the scene afterwards and disposed some of the evidence, which also supports a finding of premeditation. *See, e.g., Webster v. Horton*, 795 F. App'x 322, 327 (6th Cir. 2019).

Morris is not entitled to habeas relief on her sufficiency-of-the-evidence claim.

## IV.  Conclusion

For the reasons stated, the Court finds that Morris is not entitled to habeas relief. Her petition for the writ of habeas corpus, therefore, is denied with prejudice. Before Morris can appeal this decision, she must obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1).

To obtain a certificate of appealability, Morris must "ma[k]e a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). This requires Morris to "show[] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (internal quotation marks and citation omitted). Where a habeas petitioner's claims have been denied on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the

34

district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484.

This Court concludes that reasonable jurists would not find its assessment of Morris' claims debatable or wrong. The Court, therefore, is denying her a certificate of appealability. If Morris chooses to appeal the Court's decision, however, she may proceed in forma pauperis on appeal because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

Accordingly,

**IT IS ORDERED** that Petitioner Jessica Morris' petition for the writ of habeas corpus is **DENIED WITH PREJUDICE**;

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**, but leave to proceed on appeal in forma pauperis is **GRANTED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: July 15, 2024

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, July 15, 2024, by electronic and/or U.S. First Class mail.

s/Aaron Flanigan
Case Manager